## (March 29, 1973)

■ In the Matter of ROBERT L. ANDREWS, Appellant, v. JAMES I. NAGOURNEY, as City Manager of the City of Long Beach, et al., Respondents.— In a proceeding pursuant to article 78 of the CPLR (1) to declare the nullity of the acts of the respondent City Council of the City of Long Beach in approving a special election on April 3, 1973 on its proposed City Charter; (2) to enjoin said City Council and the respondent City Manager, City Clerk and Nassau County Board of Elections from acting with respect to said election on said proposed charter; (3) to enjoin said City Council from making any further expenditures in connection with said special election; and (4) to direct said City Council to submit to the voters of the City of Long Beach at the next general election a different proposed charter, one prepared by the Charter Revision Commission of the City of Long Beach, petitioner appeals from a judgment of the Supreme Court, Nassau County, entered March 23, 1973, which (1) dismissed the petition on the ground petitioner is not a party aggrieved and may not maintain the proceeding and (2) directed that the special election to be held on April 3, 1973 may proceed and be conducted by the respective respondents. Judgment reversed, on the law, without costs, and petition granted to the extent that respondents are prohibited from holding the special election scheduled for April 3, 1973 in its entirety. The threshold question presented on this appeal concerns standing to sue. We are of the view that the dismissal of the petition by Special Term on the stated ground that petitioner is not a " party aggrieved " was improper. In addition to being a citizen and taxpayer of the City of Long Beach, petitioner is, as will be seen, a member of a valid charter revision commission still in existence. In this matter of significant municipal concern to the citizens of Long Beach, involving the actions of municipal officials and only tangentially related to fiscal matters, petitioner has standing to bring this article 78 proceeding even though he does not show a personal grievance or a personal interest in the outcome (*Matter of Policemen's Benevolent Assn. of Westchester County* v. *Board of Trustees of Vil. of Croton-on-Hudson*, 21 A D 2d 693; see, also, *Matter of Bon-Air Estates* v. *Building Inspector of Town of Ramapo*, 31 A D 2d 502, 504; *Matter of Werfel* v. *Fitzgerald*, 23 A D 2d 306, 313; *Semple* v. *Miller*, 38 A D 2d 174, 175; *Matter of Marino* v. *Town of Ramapo*, 68 Misc 2d 44, 47). Subdivision 2 of section 36 of the Municipal Home Rule Law (section 36 hereinafter referred to as " the statute ") provides, *inter alia*, for the creation of a charter revision commission by the legislative body of any city (in the instant case,

the respondent City Council) by means of the adoption of a local law. Subdivision 4 of the statute sets forth an alternative method for the establishment of such a commission, that is, by "the mayor of any city." Certain specific requirements relating to the method of appointment or election of commission members are provided in each subdivision of the statute. By a resolution dated February 1, 1972, the respondent City Council purported to establish a charter revision commission pursuant to subdivision 4 of the statute. This it could not do for several reasons. First, the City Council has no power to establish such a commission pursuant to subdivision 4. Secondly, the detailed procedure set forth in subdivision 2 for City Council establishment of a charter revision commission was not followed. Thirdly, subdivision 2 requires that City Council establishment of a charter revision commission be by means of the adoption of a local law, not merely a resolution. It follows that the February 1, 1972 resolution of the City Council did not validly create a charter revision commission. Purportedly acting pursuant to the authority granted him by the resolution, the City Manager of Long Beach (the present charter of Long Beach makes no provision for a "mayor") appointed 11 citizens of that city to the Charter Revision Commission of Long Beach by letters dated February 28, 1972. Judicial notice is hereby taken of the fact that the City Manager filed a memorandum of appointment, dated March 2, 1972, with the city clerk, which memorandum satisfied the requirements of Municipal Home Rule Law (§ 36, subd. 4). The present Long Beach City Charter, as noted, makes no provision for a "mayor", but does state, in pertinent part of subdivision 1 of section 20 thereof, as follows: "The city manager shall be the chief executive officer of the city. Though his official title shall be city manager and that [sic] mayor, *he shall be the mayor of the city and shall have and exercise all the powers conferred upon the mayor* by this act or *by the general statutes of the state* not inconsistent with this act" (italics supplied). (In our view, the mistaken word "that" in the above excerpt should be read as "not".) For the purposes of subdivision 4 of section 36 of the Municipal Home Rule Law at least, the City Manager of Long Beach is the "mayor". He thus has the power to set up a charter revision commission pursuant to subdivision 4 and, in this case, he did precisely that. The commission was not established by the City Council, any language in the February 1, 1972 resolution to the contrary notwithstanding, but rather was validly established by the City Manager acting as a mayor pursuant to subdivision 1 of section 20 of the charter. Nothing in *Klein* v. *Mayor of City of Yonkers* (217 N. Y. S. 2d 859, affd. 14 A D 2d 885) compels a different conclusion, as that case is readily distinguishable. First, the Yonkers City Charter provides for a "mayor" as well as a "city manager". Secondly, the Yonkers mayor is granted substantial powers (e.g., a vote on the common council, the duty to preside over the council, broad powers of appointment) and is not merely relegated to ceremonial duties. One of the major questions in *Klein* concerned which officer, the elected mayor or the appointed city manager, was to exercise the powers of appointment with respect to city charter revision commissions contained in the predecessor statute to the statute currently in question. No comparable question is provided in the case at bar. If the power of establishment and appointment granted to the "mayor" in subdivision 4 of section 36 cannot be exercised by the Long Beach City Manager, then, in effect, that subdivision is a nullity as far as Long Beach is concerned. We do not reach such a result but rather hold that the City Manager of Long Beach validly exercised the powers set forth in subdivision 4 of section 36 in this case. Upon completion of its work, the Charter Revision Commission transmitted its proposed charter to the Council but failed to file

it with the City Clerk as required by · paragraph (b) of subdivision 5 of the statute. The Council made major alterations in the text of the commission's proposed charter effectively resulting in a second proposed charter. Paragraph (b) of subdivision 5 sets forth a minimum 60-day waiting period before a charter revision commission's proposed charter may be submitted to the electorate for approval. The 60-day period is measured from the date of filing. As no filing was ever effectuated as required, the original proposed charter, i.e., the charter drafted by the Charter Revision Commission prior to the extensive alterations made by the City Council, cannot be submitted to the electorate at this time. In addition, the City Council's proposed charter, i.e., the version scheduled to be submitted to the electorate on April 3, 1973, is also precluded from such electoral consideration at this time by virtue of paragraphs (e) and (f) of subdivision 5 of the statute, which effectively pro-hibit the submission of any proposed charter to the electorate in a special election, save one proposed by a "mayor-created" charter revision commission while such commission is still in existence. The terms of office of the members of the Long Beach Charter Revision Commission have not yet expired (Municipal Home Rule Law, § 36, subd. 6, par. [e]). In addition, paragraph (f) of subdivision 5 of the statute also prohibits the submission to the electorate of "any of the questions" specified in paragraph (e) of subdivision 5. Among the "questions" specified in paragraph (e) are any which involve or relate directly or indirectly to the amendment of the present city charter. The conclusion is inescapable that the scheduled special election must be canceled in its entirety. Hopkins, Acting P. J., Latham, Gulotta, Christ and Brennan, JJ., concur.