HON. JAMES RILEY Corporation Counsel, Troy
We acknowledge receipt from Assistant Corporation Counsel Henry J. Nahal of a letter inquiring whether the city manager or the mayor of the City of Troy has the authority to appoint a charter revision commission under the provisions of Municipal Home Rule Law, § 36, subdivision 4. You point out that the city manager is the chief executive officer of the city and you enclosed a copy of portions of the charter of the City of Troy for our examination. The city charter provides that each member of the city council is elected on a city-wide basis and that the city council annually selects one of its members to be mayor for one year. The charter provides that the mayor, as an elected councilman, shall have a vote on all matters coming before the council, shall be the presiding officer of the council, chairman of the standing committee on finance, and, ex officio, a nonvoting member of all other standing committees, and the mayor shall receive the regular salary of a councilman plus an additional amount for his duties as mayor. The mayor is given power to make appointments to the city planning commission, the municipal civil service commission, the Troy commission on human rights and the Troy parking authority.
The charter provides for appointment by the city council of a city manager, who is designated as the chief executive officer of the city. The term of the city manager is indifinite and may be terminated by the city council. The city manager is given broad executive powers which, in many cities, are performed by the mayor or other city officers. You bring to our attention the two cases of Klein v. Mayor of the City of Yonkers, 217 N.Y.S.2d 859, affd. without opinion 14 A.D.2d 885, motion for leave to appeal denied, 10 N.Y.2d 968 (1961), and Andrews v.Nagourney, 41 A.D.2d 778 (1973). Klein was a case construing the former City Home Rule Law, § 20, subdivision 4, as added by the Laws of 1961, Chapter 87. Andrews was a case construing the Municipal Home Rule Law, § 36, subdivision 4, which was a continuation of the former City Home Rule Law provision above cited. In Klein the court, recognizing the attenuated powers of the mayor in a city which has a village manager, held, in the Special Term decision:
 "The legislature, in its wisdom, has given the power of appointment with respect to city charter revision commissions to `the mayor of any city'
without any further definition or qualification. This means exactly what it says — no more, no less — and the court must assume, in keeping with the authorities dealing with the strong presumption of constitutionality of statutes, that the legislature must have known that there are 15 cities in the State of New York which have city managers who in most instances are the chief executive and administrative officers thereof." (Emphasis contained in original.)
In an informal opinion of this office published in 1970 Op. Atty. Gen. 178, we concluded that only the mayor of a city and not the city manager may create a charter commission to draft a new or revised city charter.
In Andrews, which involved the City of Long Beach, the question also was whether a charter revision commission could be appointed by the city manager. The pertinent facts are set forth in the memorandum decision of the Appellate Division which stated, in part:
"* * * The present Long Beach City Charter, as noted, makes no provision for a `mayor', but does state, in pertinent part of subdivision 1 of section 20 thereof, as follows: `The city manager shall be the chief executive officer of the city. Though his official title shall be city manager and that [sic] mayor,he shall be the mayor of the city and shall have and exerciseall the powers conferred upon the mayor by this act or by thegeneral statutes of the state not inconsistent with this act' (italics supplied). (In our view, the mistaken word `that' in the above excerpt should be read as `not'.) For the purposes of subdivision 4 of section 36 of the Municipal Home Rule Law at least, the City Manager of Long Beach is the `mayor'. He thus has the power to set up a charter revision commission pursuant to subdivision 4 and, in this case, he did precisely that. The commission was not established by the City Council, any language in the February 1, 1972 resolution to the contrary notwithstanding, but rather was validly established by the City Manager acting as a mayor pursuant to subdivision 1 of section 20 of the charter. Nothing in Klein v. Mayor of City of Yonkers
(217 N.Y.S.2d 859, affd. 14 A.D.2d 885) compels a different conclusion, as that case is readily distinguishable. First, the Yonkers City Charter provides for a `mayor' as well as a `city manager'. Secondly, the Yonkers mayor is granted substantial powers (e.g., a vote on the common council, the duty to preside over the council, broad powers of appointment) and is not merely relegated to ceremonial duties. One of the major questions inKlein concerned which officer, the elected mayor or the appointed city manager, was to exercise the powers of appointment with respect to city charter revision commissions contained in the predecessor statute to the statute currently in question. No comparable question is provided in the case at bar. If the power of establishment and appointment granted to the `mayor' in subdivision 4 of section 36 cannot be exercised by the Long Beach City Manager, then, in effect, that subdivision is a nullity as far as Long Beach is concerned. We do not reach such a result but rather hold that the City Manager of Long Beach validly exercised the powers set forth in subdivision 4 of section 36 in this case. * * *" (Emphasis and explanatory material contained in original.)
In our opinion, there is no conflict between Klein andAndrews. Klein enunciated the rule that as between a city mayor and a city manager, the power of appointment lay with the mayor.Andrews held that in a city which has no such officer as mayor but has a city manager who, by the terms of the city charter, "shall have and exercise all the powers conferred upon the mayor by this act or by the general statutes of the state not inconsistent with this act", the city manager was, for the purposes of the Municipal Home Rule Law, the city mayor. The City of Troy does have a city mayor. The charter of the City of Troy is not comparable in this respect to the charter of the City of Long Beach which was the subject of the litigation in theAndrews case.
In our opinion, the mayor, and not the city manager, of the City of Troy, has the power to appoint a charter revision commission under the provisions of Municipal Home Rule Law, § 36, subdivision 4.